**WO** JKM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Dilma Leticia Salguero-Morales,
Petitioner,
vs.
Janet Napolitano, et al.,
Respondents.

No. CV 09-0194-PHX-MHM (JRI)

**ORDER**

Pending before the Court is Petitioner's request for a stay of removal (Doc. 32).[1] Because a request for a stay of removal requires the Court to consider Petitioner's likelihood of success on the merits of the underlying Amended Petition, see Nken v. Holder, 129 S. Ct. 1749, 1761 (2009), and the Amended Petition is now fully briefed, the Court will withdraw the reference to the Magistrate Judge and rule on the Amended Petition.

## I. Background

Petitioner is a native and citizen of Guatemala. On November 20, 1989, Petitioner entered the United States without being inspected or paroled. She is the single mother of two children who are both United States citizens. In 1996, she applied for asylum, which brought her to the attention of the Immigration and Naturalization Service (INS). On August 9, 1996, after Petitioner had been in the United States about three months shy of seven years, the INS issued an Order to Show Cause (OSC) alleging that she was deportable as an alien who

[1] The Court previously granted a temporary stay of removal. (Doc. 34).

entered the United States without inspection or parole. Petitioner conceded that she was deportable, but applied for asylum, withholding of deportation, and suspension of deportation. In October of 1997, after receiving evidence and hearing testimony on Petitioner's application for suspension, an Immigration Judge (IJ) indicated that he would grant the application; he found that Petitioner was eligible for suspension and that her deportation would cause extreme hardship. But on February 4, 1998, the IJ reversed course: he denied Petitioner's application for suspension of deportation on the ground that the new "stop-time" rule enacted as part of Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) applied retroactively, making her ineligible for suspension of deportation because her OSC was issued three months before she had acquired seven years of continuous presence in the United States. The IJ also denied Petitioner's applications for asylum and withholding of deportation and ordered her to voluntarily depart the United States.

On June 14, 2002, the Board of Immigration Appeals (BIA) summarily affirmed the IJ without opinion. Petitioner filed a petition for review with the United States Court of Appeals for the Ninth Circuit, but her former counsel did not challenge the IJ's retroactive application of the IIRIRA stop-time rule. On February 18, 2004, the Ninth Circuit denied the petition for review, holding that the IJ properly denied Petitioner's applications for asylum and withholding of deportation. Petitioner was taken into custody in January of 2009. She is currently confined in the Eloy Detention Center.

## II. Amended Petition

### A. Claim for Relief

The claim for relief in Petitioner's original Petition (Doc. 1) was less than clear. Based on paragraphs 14 and 15 under the "FACTS" section, the Court interpreted the Petition as presenting a claim that Petitioner's "former counsel was ineffective in failing to seek review of the IJ's retroactive application of the 'stop-time' rule." (Doc. 6 at 2.) Petitioner subsequently filed an Amended Petition (Doc. 27) that neither confirmed nor disavowed the Court's interpretation of her claim. Instead, the Amended Petition simply

added two new paragraphs (¶¶ 22–23) under the "CAUSES OF ACTION" section of her Amended Petition. In these new paragraphs, relying on Alcaraz v. INS, 384 F.3d 1150 (9th Cir. 2004), Petitioner argues that she was eligible for "repapering" when her appeal was considered by the BIA. This Order will focus on Petitioner's Alcaraz claim.

**B. Suspension, Repapering, and Cancellation**

If not for IIRIRA's new stop-time rule, Petitioner would have accrued seven years of continuous presence in the United States and would have been statutorily eligible for suspension of deportation on November 20, 1996. Prior to IIRIRA, an alien was eligible for suspension of deportation if the alien: (1) "ha[d] been physically present in the United States for a continuous period of not less than seven years *immediately preceding the date of [the] application*"; (2) was a "person of good moral character"; and (3) "whose deportation would . . . result in extreme hardship to the alien or to an [immediate family member] who is a citizen of the United States." 8 U.S.C. § 1254(a)(1) (1994) (emphasis added). Because aliens in deportation proceedings "continued to accrue time towards satisfying the seven-year residency requirement for suspension of deportation during the pendency of the proceedings," Petitioner would have satisfied the residency requirement on November 20, 1996, even though the INS issued an OSC on August 9, 1996. Jimenez-Angeles v. Ashcroft, 291 F.3d 594, 598 (9th Cir. 2002).

But before Petitioner's application for suspension was heard on its merits, IIRIRA § 309(c)(5) changed the date that the clock stopped for determining whether an alien met the seven-year residency requirement for suspension of deportation. Under the new stop-time rule, the date the clock stopped changed "from the date that an alien filed his or her application for suspension of deportation with the INS to the date the INS served an alien with an *Order to Show Cause*." Alcaraz 384 F.3d at 1154. In Ram v. INS, 243 F.3d 510, 516 (9th Cir. 2001), the Ninth Circuit held that the new stop-time rule applied retroactively to aliens with applications for suspension of deportation that were still pending after the April 1, 1997 effective date of IIRIRA. The new stop-time rule therefore retroactively deprived Petitioner of eligibility for suspension of deportation.

IIRIRA, however, did not leave aliens who were subject to the new retroactive stop-time rule without a remedy. Under IIRIRA § 309(c)(3), the Attorney General is authorized to terminate the case of aliens that were in deportation proceedings prior to April 1, 1997, and then recommence removal proceedings under the new statutory scheme. "Section 309(c)(3) permits the Attorney General to allow aliens who would have been eligible for suspension of deportation but for the new stop-time rule to be placed in removal proceedings where they may apply for cancellation of removal[2] under 8 U.S.C. § 1229b." Alcaraz, 384 F.3d at 1154.

The Attorney General, through the INS and the Executive Office of Immigration Review (EOIR), subsequently "issued several directives to the BIA to administratively close removal proceedings of eligible aliens through a process called 'repapering.'" Id. On December 7, 1999, INS General Counsel Bo Cooper issued a Memorandum directing the BIA to *sua sponte* close the cases of aliens who are eligible for repapering. Memorandum of Bo Cooper, General Counsel for the INS, dated Dec. 7, 1999, reproduced in 77 Interpreter Releases 39, App. 1 at *2 (Jan. 10, 2000) (Cooper Memorandum), available at http://www.usdoj.gov/eoir/chip4.pdf ("The Board will sua sponte administratively close cases meeting the above criteria on a case-by-case basis."). Under the Cooper directive, an alien was eligible for repapering if the alien: "(1) is not a lawful permanent resident; (2) would be statutorily eligible for suspension of deportation under [pre-IIRIRA law]; and (3) is statutorily eligible for cancellation of removal under [post-IIRIRA law]." Id. at *1–2. In a March 14, 2000 memorandum to BIA legal staff, Vice-Chair of the BIA Lori L. Scialabba reaffirmed the BIA's policy of administratively closing the cases of aliens who were eligible for repapering. Memorandum of Lori L. Scialabba, Vice Chair of the BIA, dated March 14, 2000 (Scialabba Memorandum), available at http://www.usdoj.gov/eoir/chip6.pdf ("Until [a

---

[2] Section 309 of IIRIRA created a new form of relief, "cancellation of removal," that replaced suspension of deportation. The new cancellation of removal scheme established stricter eligibility requirements—including ten-years of residence—than was required for suspension of deportation.

formal] regulation is promulgated, to ensure that such aliens will be able to avail themselves of the opportunity to request repapering when the regulation is published, the Board plans to administratively close the proceeding of any alien who appears eligible for non-LPR repapering."). On August 28, 2000, BIA Chairman Paul Schmidt issued a memorandum to the BIA judges describing the administrative procedures they were to use for repapering. Memorandum of Paul Schmidt, Chairman of the Executive Office of Immigration Review, dated Aug. 20, 2000 (Schmidt Memorandum), available at http://www.usdoj.gov/eoir/vll/genifo/streamimplem.pdf. Under the Schmidt Memorandum, a single BIA judge is authorized to exercise the authority of the BIA for ''Non–Lawful Resident Repapering cases [any cases in which the Attorney General is authorized to terminate deportation proceedings and reinitiate removal proceedings under section 309(c)(3) of IIRIRA].'' Id. at 6 (brackets in original).

The BIA began closing the cases of aliens who were eligible for repapering in March of 2000. See Alcaraz, 384 F.3d at 1155; 1 Immigration Law and Defense § 8:39, n. 6 (March 2010). And although the proposed regulation formalizing the repapering procedures, 8 C.F.R. § 240.3, has not yet been promulgated, the BIA has continued to administratively close the cases of aliens who are eligible for repapering. See In re Cabrera-Herrera, Nos. A070-774-019 and A070-774-021, 2008 WL 5537728 (BIA Dec. 31, 2008) (unpublished decision); In re Nanez-Zapien, No. A74-432-810, 2005 WL 1848372 (BIA May 11, 2005) (unpublished decision citing Alcaraz).

With this background in mind, the Ninth Circuit "[i]n Alcaraz, . . . held that the Attorney General's broad discretion 'has been legally circumscribed by various memoranda through which the INS implemented its repapering policy.'" Diaz-Covarrubias v. Mukasey, 551 F.3d 1114, 1119 (9th Cir. 2009) (quoting Alcaraz, 384 F.3d at 1161). Although the court in Alcaraz noted that "[t]he legal proposition that agencies may be required to abide by certain internal policies is well-established," it ultimately declined to decide whether the various agency memoranda established a policy under which the BIA was *required* to repaper eligible aliens. Alcaraz, 384 F.3d at 1162. Instead, the court directed the BIA to

determine in the first instance whether repapering was warranted. Id. at 1162–63. Notwithstanding the striking similarity of the material facts in Alcaraz to the facts in this case, Respondents argue that the Court cannot grant the same relief to Petitioner because jurisdiction is lacking and Petitioner has failed to exhaust her administrative remedies.

**C. Jurisdiction**

Respondents argue that the amendments to 28 U.S.C. § 1252 made by section 106(a) of the REAL ID Act of 2005 deprive the Court of jurisdiction to consider Petitioner's habeas corpus claims. Respondents argue that 28 U.S.C. § 1252(a)(5), which grants exclusive jurisdiction in the circuit courts of appeals to review final orders of removal, deprives the court of jurisdiction over Petitioner's claims because "[a] successful habeas petition in this case will lead to a substantive review of the merits of Petitioner's removal order." (Doc. 30 at 5–6.) Respondents also argue that under 8 U.S.C. § 1252(b)(9), the jurisdictional bar on review by the district courts extends beyond direct review of the removal order itself to claims that are "inextricably intertwined with the removal order" and to claims that are not "wholly independent of, or wholly collateral to the removal process." (Doc. 30 at 7–8.) The Court disagrees. Neither of these statutory provisions deprive the Court of jurisdiction to review Petitioner's claim that the BIA was required to consider whether to administratively close Petitioner's case before it entered a final order of removal.

As amended by the REAL ID Act, 8 U.S.C. § 1252(a)(5) provides that "[n]otwithstanding any other provision of law . . ., including section 2241 of Title 28, or any other habeas corpus provision, . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an *order of removal* entered or issued under any provision of the [Immigration and Naturalization Act (INA)]." 8 U.S.C. § 1252(a)(5) (emphasis added). Thus, under § 2252(a)(5), a "district court plainly lack[s] habeas jurisdiction" to review removal orders. Iasu v. Smith, 511 F.3d 881, 888 (9th Cir. 2007). But § 1252(a)(5) does not deprive the district courts of habeas corpus jurisdiction over claims that do not seek review of *removal orders*. Singh v. Gonzales, 499 F.3d 969, 978 (9th Cir. 2007). Thus, § 1252(a)(5) does not deprive the district courts of habeas corpus

jurisdiction to review the propriety of the detention of an alien even when the alien is subject to an administratively final[3] order of removal. See Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 946 (9th Cir. 2008). Similarly, district courts retain habeas corpus jurisdiction to consider an alien's claim that his attorney provided him with ineffective assistance of counsel by failing to timely file a petition for review with the court of appeals from an administratively final order of removal because the claim does not challenge the validity of the removal order itself. Singh, 499 F.3d at 979. Accordingly, whether the district courts retain habeas corpus jurisdiction turns not on whether the alien is subject to an order of removal, but whether the alien seeks to challenge the removal order itself.

Petitioner is challenging the BIA's failure to consider whether to administratively close her removal proceedings before they entered a final order of removal, she is not challenging the removal order itself. Notwithstanding Respondents' assertion to the contrary, a successful habeas petition on that claim will *not* lead to a substantive review of the merits of Petitioner's removal order. An order requiring the BIA to consider whether to administratively close Petitioner's case does not require the Court to declare that Petitioner's removal order is invalid.

Alternatively, Respondents assert that under 8 U.S.C. § 1252(b)(9), the jurisdictional bar on review by the district courts extends beyond direct review of the removal order itself to claims that are "inextricably intertwined with the removal order" and to claims that are not "wholly independent of, or wholly collateral to the removal process." (Doc. 30 at 7–8.) Respondents' interpretation of § 1252(b)(9) sweeps too broadly. The provision does not grant exclusive jurisdiction to the courts of appeals over all claims that are connected to the removal process—a claim need not be, as Respondents claim, "independent of, or wholly collateral to the removal process." (Doc. 30 at 7–8.) In Alcala v. Holder, 563 F.3d 1009,

---

[3] An immigration judge's order of removal becomes "final" upon a "determination by the Board of Immigration Appeals affirming such order" or the "expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals," whichever is earlier. 8 U.S.C. § 1101(a)(47)(B)(i)-(ii)

1016 (9th Cir. 2009), the Ninth Circuit held that § 1252(b)(9) did not confer jurisdiction on the court of appeals over a challenge to a BIA order administratively dismissing removal proceedings notwithstanding the existence of a prior order of removal "whose reinstatement is apparently inevitable." Because the alien in Alcala was challenging the dismissal of removal proceedings rather than an actual removal order, § 1252(b)(9) did not grant jurisdiction—exclusive, or otherwise—to the court of appeals.

Moreover, the Ninth Circuit has explicitly considered and rejected the claim that § 1252(b)(9) precludes habeas corpus challenges not only to removal orders, but also to removal proceedings.

> By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal. Section 1252(a)(5) is prominently directed to "judicial review of an order of removal." Section 1252(b)(9) explicitly covers "any action taken or proceeding brought to remove an alien." To the extent that this language could be viewed as broader than § 1252(a)(5), as argued by the government, we are guided by the Supreme Court. In St. Cyr, the Court confirmed that § 1252(b)(9) "applies *only* 'with respect to review of an *order of removal* under [8 U.S.C. § 1252(a)(1) ].'" 533 U.S. at 313 (emphasis added) (citing 8 U.S.C. § 1252(b)). The Court further emphasized, "[s]ubsection (b)(9) simply provides for the consolidation of issues to be brought in petitions for '[j]udicial review'...." Id. The language added by the REAL ID Act does nothing to change or undermine that analysis.

Singh, 499 F.3d at 978. Respondents argue, however, that Singh is distinguishable because it involved a claim of ineffective assistance of counsel that arose *after* the entry of an administratively final order of removal. They argue that challenges like Petitioner's, involving claims that arose *before* issuance of a final order of removal, are barred by § 1252(b)(9) because they seek review of removal *proceedings*. Respondents' temporal argument is not well taken. The fact that Singh's ineffective assistance claim arose after issuance of his final order of removal was relevant in Singh only because the timing demonstrated that Singh's "claim [could] not be construed as seeking judicial review of his final order of removal, notwithstanding his ultimate goal or desire to overturn that final order of removal." Id. at 979. A claim, like Petitioner's, that arises prior to an order of removal may also challenge a detention that arose independent of the removal order. See Kharana v. Chertoff, No. C07-04754, 2007 WL 4259323 at *3 (N.D. Cal. Dec. 3, 2007) (a habeas corpus

challenge to a conviction that served as a basis for a removal order was not distinguishable from Singh merely because the claim arose prior to the order of removal). Because Petitioner's claim that the BIA improperly failed to consider whether to administratively close her removal proceedings before they entered a final order of removal does not challenge the removal order itself, § 1252(b)(9) does not bar this action.

**D. Exhaustion of Administrative Remedies**

Respondents also argue that this action should be dismissed because Petitioner has failed to properly exhaust her administrative remedies. They assert that because Petitioner failed to raise her claims before the BIA in a motion to reopen, this action is barred under both statutory and prudential exhaustion requirements. Respondents arguments are unavailing because the statutory exhaustion requirement is inapplicable and dismissal under the prudential exhaustion requirement is not warranted. In addition to arguing that Petitioner failed to exhaust her administrative remedies, Respondents also argue that Petitioner has procedurally defaulted her claims by failing to raise them with the BIA before bringing this action. The Court will therefore first consider whether this action should be dismissed for Petitioner's failure to raise her repapering claim in her appeal to the BIA.

As in Alcaraz, the legal issue that Petitioner raises in this action "could not be briefed on [her] direct appeal to the BIA because the INS issued its repapering policies to the BIA a year and a half after the date when [she was] required to submit [her] brief[] to the BIA." Alcaraz, 384 F.3d at 1159. Petitioner filed her brief with the BIA on September 8, 1998 (the Alcarazes submitted their briefs to the BIA on July 20, 1998). The Cooper Memorandum telling the BIA to *sua sponte* close the deportation proceedings of aliens who are eligible for repapering was issued by INS General Counsel on December 7, 1999. Cooper Memorandum. The Scialabba Memorandum announcing the Board's plan to administratively close the proceeding of eligible aliens was issued by the Vice Chair of the BIA on March 14, 2000. Scialabba Memorandum. The Schmidt Memorandum authorizing single BIA judges to repaper cases was issued by the Chairman of the BIA on August 28, 2000. Schmidt Memorandum. The proposed rule regarding repapering was issued by the

INS and EOIR on September 30, 2000. 65 Fed. Reg. 71,273. The BIA issued its decision holding that the Petitioner was ineligible for suspension because of the new retroactive stop-time rule on June 14, 2002 (the BIA's decision in the Alcaraz case issued on June 18, 2001).

Petitioner was unable to exhaust her administrative remedies because the Cooper Memorandum, Scialabba Memorandum, Schmidt Memorandum, and the proposed regulation were issued after she was required to submit her brief to the BIA. This situation is identical to the facts in Alcaraz, where the aliens could not brief their repapering claim on direct appeal to the BIA because the repapering procedures were instituted after their briefing was due to the BIA. In Alcaraz, the Ninth Circuit concluded that exhaustion of administrative remedies is not required "on legal issues based on events that occur *after* briefing to the BIA has been completed." Alcaraz, 384 F.3d at 1158. As in Alcaraz, Petitioner has not procedurally defaulted her claims by failing to raise them in her appeal to the BIA.

But Respondents assert that even if direct review was not available before the BIA, Petitioner is required by 8 U.S.C. § 1252(d)(1) to raise her claim in a motion to reopen before the BIA. This statutory exhaustion requirement limits the power of courts to review immigration proceedings to those for which "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The statutorily-mandated exhaustion requirement applies to both habeas corpus petitioners and those seeking direct review in the courts of appeals. See Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). The statutory requirement is mandatory and jurisdictional. See id. But the statute only limits a court's authority to review "a final order of removal." 8 U.S.C. § 1252(d). As noted earlier, Petitioner is not challenging a final order of removal; she challenges only the BIA's failure to consider whether to administratively close her removal proceedings before they entered a final order of removal. The statutory exhaustion requirement therefore does not apply.

Respondents also argue that even if statutory exhaustion is not required, Petitioner's failure to raise her claim in a motion to reopen before the BIA is cause for dismissal under

the prudential exhaustion requirement. When administrative exhaustion is not statutorily required, it may nonetheless be "judicially imposed as a matter of prudence." Puga, 488 F.3d at 815. Unlike statutorily imposed exhaustion, which is mandatory and jurisdictional, courts have discretion to waive prudential exhaustion. Id. "Nevertheless, '[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional.'" Id. (quoting Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30, 36 & n.5 (2006)). "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" Puga, 488 F.3d at 815 (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). As explained below, those factors do not support dismissal, but they do suggest that the appropriate remedy in this case is the same remedy imposed by the Ninth Circuit in Alcaraz.

In their Notice of Supplemental Authority (Doc. 38), Respondents alert the Court to a recent application of the prudential exhaustion requirement by the Ninth Circuit in Singh v. Napolitano (Rajinder Singh), No. 07-16988, 2010 WL 3293696 (9th Cir. Aug. 23, 2010). In that case, an alien brought a habeas corpus petition claiming that his counsel failed to perfect his appeal after the BIA finalized his removal order. The district court determined that the petition must be dismissed under the prudential exhaustion doctrine because the alien failed to raise his ineffective assistance claim in a motion to reopen filed with the BIA. On appeal to the Ninth Circuit, the alien argued that he should not be required to file a motion to reopen because the BIA lacks jurisdiction to review claims of ineffective assistance that occurred after a final order of removal had been entered. While the appeal was pending, the Attorney General issued In re Compean (Compean II), 25 I & N Dec. 1, 3 (A.G. 2009), holding that the BIA's "discretion to reopen removal proceedings includes the power to consider claims of ineffective assistance of counsel based on conduct of counsel that

occurred after a final order of removal had been entered." In Rajinder Singh, after first remanding to the BIA for a determination of whether Compean II applied retroactively and receiving an ambiguous answer, the Ninth Circuit itself held that Compean II applied retroactively. They further held that with the retroactive application of Compean II, the alien had an unexhausted available remedy in the form of a motion to reopen. The court therefore upheld the district court judgment dismissing for failure to exhaust.

But the retroactive application of Compean II is not determinative of the exhaustion issue as to the claim raised for the first time in Petitioner's Amended Petition. The Court does not read paragraphs 22 and 23 of the Amended Petition as claiming that former counsel was ineffective in failing to raise her Alcaraz claim.[4] Rather, the Court reads the Amended Petition as claiming that Petitioner is entitled to the same relief that the aliens in Alcaraz were granted because the BIA should have considered whether to administratively close her case under the repapering procedures that were established after she filed her brief to the BIA and before the BIA issued its decision on her appeal. The Ninth Circuit's application of the prudential exhaustion requirement in Alcaraz is therefore on point:

> In light of the fact that the petitioners apparently cannot now file a motion to reopen with the BIA due to untimeliness, see 8 C.F.R. § 1003.2(c)(2) (a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"), the prudential exhaustion requirement does not apply. See Castillo-Villagra [v. INS], 972 F.2d [1017,] 1024 [9th Cir. 1992] ("The prudential exhaustion requirement does not apply where it would be futile.")

Alcaraz, 384 F.3d at 1158. Because Petitioner is in precisely the same circumstance as the aliens in Alcaraz, the Court will not dismiss this action under the prudential exhaustion requirement.

**E. The BIA Must Decide Whether to Repaper**

In Alcaraz, the aliens failed to present their repapering claim in their opening briefs. The Ninth Circuit nevertheless considered the claim notwithstanding the normal rule that

---

[4] Alcaraz was decided on October 1, 2004, after Petitioner's appeal was dismissed by the Ninth Circuit on February 18, 2004.

matters on appeal will only be considered if they are specifically and distinctly argued in the opening brief. Id. at 1161. They did so because they concluded that

> our failure to review the Alcarazes' repapering issue would "result in manifest injustice." It appears that the Alcarazes were potentially eligible for repapering when their case was before the BIA in 2001. Because the BIA may have been obligated to repaper the Alcarazes, our failure to reach this issue could result in "manifest injustice."

Id. (citations omitted). The same is true here—Petitioner was potentially eligible for repapering when her case was before the BIA in 2001 and failure to reach the issue could result in manifest injustice.

But the Court cannot reach the issue if the BIA's failure to consider whether to administratively close and repaper Petitioner's case was solely a matter of agency discretion. Habeas corpus jurisdiction extends only to claims that allege a violation of the Constitution or federal statutes. Singh v. Ashcroft, 351 F.3d 435, 439 (9th Cir. 2003) ("The scope of habeas jurisdiction under 28 U.S.C. § 2241 is limited to claims that allege constitutional or statutory error."). Habeas corpus jurisdiction does not extend to the review of purely discretionary administrative decisions. Gutierrez-Chavez v. INS, 298 F.3d 824, 828 (9th Cir. 2002). Habeas corpus petitioners may, however, raise questions of law arising in the context of a challenge to the denial of discretionary relief. See, e.g., INS v. St. Cyr, 533 U.S. 289 (2001) (reviewing legal question of eligibility to apply for discretionary relief under former INA § 212(c)). Habeas corpus also "is available to claim that the INS somehow **failed to exercise discretion in accordance with federal law** or did so in an unconstitutional manner." Gutierrez-Chavez, 298 F.3d at 828 (emphasis added). Whether the BIA's application of its repapering procedures was solely discretionary was also an issue in Alcaraz, although in a slightly different context.

The Ninth Circuit noted that it lacked jurisdiction to reach the claim that the Alcarazes were entitled to repapering if the procedures were purely a matter of agency discretion. Under the Administrative Procedure Act, jurisdiction is lacking to review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Ninth Circuit concluded that the BIA's repapering policy was not a purely discretionary matter:

> While IIRIRA Section 309(c)(3), on its face, gives the Attorney General discretion, the Alcarazes' argument is that this discretion has been legally circumscribed by various memoranda through which the INS implemented its repapering policy. Under these circumstances, we find that statute is not drawn in such broad terms that there is no law to apply.

Alcaraz, 384 F.3d at 1161. Having determined that the matter was not "committed to agency discretion by law," the Ninth Circuit then turned to the question of whether the BIA's internal policy and practice required it to repaper the Alcarazes. But after noting that the "legal proposition that agencies may be required to abide by certain internal policies is well established," the court declined to determine whether the various repapering memoranda were sufficient to establish a binding agency policy. Id. at 1162. Instead, the Ninth Circuit remanded the issue to the BIA for a determination of the issue in the first instance.

The same relief is appropriate here. The Court will not determine whether the BIA was required to repaper Petitioner, but where the agency's internal memoranda called for the BIA to administratively close the cases of aliens in Petitioner's circumstances, it was not free to decline to decide whether to close her case. See Gutierrez-Chavez, 298 F.3d at 828) (habeas corpus "is available to claim that the INS somehow failed to exercise discretion in accordance with federal law"). Accordingly, the Court will remand to the BIA for a determination of the repapering issue in the first instance.

**III. Detention**

Petitioner has filed a Motion to Order Immigration Judge to Hold a Custody Redetermination Hearing (Doc. 35) in accordance with Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008). The Court agrees with Respondents that Casas-Castrillon is inapposite because Petitioner is currently subject to detention under 8 U.S.C. § 1231, not 8 U.S.C. § 1226. Unlike the alien in Casas-Castrillon, Petitioner is subject to a final order of removal, which is not subject to a stay by the court of appeals on direct review. Accordingly, she is not entitled to a custody redetermination proceeding under Casas-Castrillon. But whether Petitioner's ongoing detention under § 1231 is lawful is an open question.

Petitioner has now been detained by Immigration and Customs Enforcement (ICE) for more than 19 months. The parties have not briefed and it is unclear whether her detention for this extended period is properly authorized under 8 U.S.C. § 1231. Cf. Zadvydas v. Davis, 533 U.S. 678 (2001) (when there is no reasonable likelihood that a foreign government will accept an alien's return in the reasonably foreseeable future, the INS may not detain the alien for more than the presumptively reasonable period of six months). See also Clark v. Martinez, 543 U.S. 371 (2005) (extending the holding in Zadvydas to inadmissible aliens). But even if Petitioner's continuing detention under § 1231 is lawful, recent agency memoranda suggest that ICE itself may no longer consider Petitioner's continued detention to be appropriate.

On June 30, 2010, ICE Assistant Secretary John Morton issued a Memorandum entitled "Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens," directing ICE officers to focus their limited resources on the apprehension, detention, and removal of "[a]liens who pose a danger to national security or a risk to public safety . . . , [r]ecent illegal entrants . . ., [and] [a]liens who are fugitives or otherwise obstruct immigration controls" in descending order of priority. Memorandum of John Morton, Assistant Secretary of ICE, dated June 30, 2010 (Morton Memorandum), available at http://www.ice.gov/doclib/civil_enforcement_priorities.pdf. The Morton Memorandum also provides that "[a]bsent extraordinary circumstances or the requirements of mandatory detention, field office directors should not expend detention resources on aliens who . . . demonstrate that they are primary care takers of children . . . or whose detention is otherwise not in the public interest." Id. at 3–4 (emphasis in original). It appears that this directive may apply to Petitioner. But, as with the repapering issue, the Court will not decide whether the Morton Memorandum creates binding agency policy. Instead, the Court will require Respondent Katrina Kane, who is the relevant Field Office Director, to consider the matter in the first instance.

**IV. Conclusion**

Petitioner is the single mother of two United States citizen children. Although her entry into the United States in 1989 was unlawful, there is no allegation that Petitioner has subsequently committed any crimes or is in any way a danger to the community. In 1997, an IJ found that she was eligible for and merited suspension of deportation. But for the new retroactive stop-time rule, it appears that she would have been granted suspension of deportation. The agency itself recognized that application of the new rule to aliens in Petitioner's circumstances is unreasonably harsh. It therefore established procedures to give such aliens a means to avoid the unfair retroactive application of the stop-time rule. The agency, however, failed to consider the application of the new procedures in Petitioner's case. For the reasons explained above, they will be required to do so now.

**IT IS ORDERED:**

(1) The reference of this matter to Magistrate Judge Jay R. Irwin is **withdrawn**.

(2) Petitioner's request for a stay of removal (Doc. 32) is **granted** to the extent that Petitioner may not be removed from the United States unless the BIA affirmatively declines to administratively close Petitioner's immigration proceedings.

(3) Petitioner's Motion to Order Immigration Judge to Hold a Custody Redetermination Hearing (Doc. 35) is **denied**.

(4) Respondent Katrina Kane must determine whether Petitioner's current custody is appropriate under the Morton Memorandum. Respondent Kane must report her custody decision to the Court within 14 days from the date this Order is filed

(5) The Amended Petition for Writ of Habeas Corpus (Doc. 27) is **granted** and this matter is remanded to the BIA for a determination of whether Petitioner's immigration proceedings should be administratively closed. Respondents must report the results of the BIA's decision within 60 days of the date this Order is filed.

/ / /

(6) Respondents must provide a copy of this Order to the BIA forthwith.

DATED this 30th day of September, 2010.

Mary H. Murguia
United States District Judge